## Commonwealth *v.* White et al., Appellants.

*School code—School taxes—Special bond—General bond—Failure to file special bond—Liability on general bond.*

A tax collector was elected to his office in accordance with the provisions of the Act of June 25, 1885, P. L. 187, and, before entering upon the duties of his office, executed a bond to the Commonwealth in accordance with the provisions of that statute. He did not give a special bond as provided under the Act of May 18, 1911,

P. L. 309 (School Code). Subsequently, on his default for certain school taxes which he had collected, judgment was entered on the general bond.

Under such circumstances, it was error to refuse a petition by the sureties on the general bond to open the judgment and let them into a defense.

Under the provisions of the school code a special bond was required of the tax collector, to be approved by the board of school directors. Upon failure of the school board to exact such a bond, the sureties on the general bond are not liable for the misappropriation of the school taxes.

Black v. Duquesne Borough, 239 Pa. 96, distinguished.

Argued October 26, 1920. Appeal, No. 74, Oct. T., 1920, by defendants, from judgment of C. P. Potter County, Dec. T., 1918, No. 24, discharging rule to open judgment in the case of Commonwealth of Pennsylvania for use thereof, and for the use of the County of Potter, the Poor District of Potter County and the School District of Galeton Borough, v. John L. White, T. R. Quick, Appellants, and Harry D. Martin. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Rule to open judgment. Before HECK, P. J.

The facts are stated in the opinion of the Superior Court.

The court discharged the rule. Defendant appealed.

*Error assigned* was the order of the court.

*W. K. Swetland,* for appellants.—The sureties on the general tax collector's bond cannot be held liable for the collector's default in accounting for school taxes when the school tax duplicate or warrant were delivered to the collector without requiring a special bond under the provisions of the School Code: Black v. Duquesne Borough S. Dist., 239 Pa. 96; Commonwealth ex rel. v. Duquesne School Dist., 256 Pa. 50; Com. v. Klugh et al.

556 COMMONWEALTH *v.* WHITE et al., Appellants.

Arguments—Opinion of the Court. [75 Pa. Superior Ct. (No. 1), 25 D. R. 476; Com. v. Perrego, 40 Pa. Superior Ct. 320; Com. v. Toms et al., 45 Pa. 408; Copelin v. Harrisburg Sch. Dist., 242 Pa. 221; McGarrity v. McQuail, 240 Pa. 232.

No appearance and no printed brief for appellee.

OPINION BY HEAD, J., March 5, 1921:

We are all of opinion the first position taken by the learned counsel for the appellant is untenable. It is true the bond upon which these appellants were sureties was required to be filed in the office of the clerk of the court of quarter sessions, there to remain "subject to the order of the court for the security of the said townships, boroughs and school districts." See Act of the 17th of February, 1859, P. L. 51, extended to Potter County by the Act of April 2, 1860, P. L. 584. These statutes are still in force. We may concede that a due regard for the principles underlying sound practice would have suggested an application to the court of quarter sessions for leave to withdraw, from its records, the bond in question and file the same in the office of the prothonotary, so that the warrant of attorney attached to it might be duly executed. It is clear the court of quarter sessions could have authorized such withdrawal of its record for that purpose and doubtless would have made such order had one been applied for. It would in no way benefit the appellants to reverse the order or decree of the court below on that ground. That could only result in a new proceeding properly begun after an unnecessary expenditure of time and money that would benefit no one. We therefore hold the error was harmless and these appellants were in no true sense aggrieved by the refusal of the court to strike off the judgment on that ground.

The second question raised by the appellants and the one chiefly relied on by their learned counsel presents more serious considerations. The principal in the bond named was the duly elected tax collector of the Borough

of Galeton, in the County of Potter. He was elected under the provisions of the Act of June 25, 1885, P. L. 187, and before entering upon the duties of his office executed a bond to the Commonwealth in accordance with the provisions of that statute. The condition of such a bond is required by the act to be, and in this case was, "that the said collector shall well and truly collect and pay over or account for, according to law, the whole amount of taxes charged and assessed in the duplicates, which shall be delivered to him." As a matter of fact the school directors of the school district of the Borough of Galeton did deliver to him what purported to be tax duplicates of the school taxes for each of the years 1914 and 1915. The alleged default of the collector, for which the appellant sureties are now to be held, arose from the failure of the collector to collect and pay over or account for some portion of these school taxes. Had this default occurred and this proceeding been instituted at any time after the Act of 1885 and before the adoption of the Act of May 18, 1911, P. L. 309, commonly known as the School Code, there would have been no room for the defense now advanced by the sureties to the general bond of the tax collector. The reason is plain enough. Within the period named the right of the duly elected tax collector to receive the school duplicate and collect the school taxes would have accrued to him by virtue of his office. After his election and qualification by taking the oath of office and giving the general bond required by the terms of the Act of 1885, it would have been his right to collect the school taxes, as well as all other general municipal taxes lawfully assessed within the limits of the township or borough for which he had been elected. The school directors would have had neither the right nor the power to withhold their duplicate and warrant and their duty in that respect would have been fully complied with by the delivery of them to the duly elected tax collector.

It was the purpose of the legislature by the enactment of the law of 1911 to codify and reduce to harmony all earlier legislation as it specially affected the school affairs of the State and the several districts thereof. One of the more important matters considered and provided for by that statute related to the financial affairs of the several school districts; and in this connection with the collection of the taxes lawfully imposed upon the electors of the district by the school authorities. Section 550 of that act declares "Every person appointed or elected collector of school taxes in any school district ......in this Commonwealth, in addition to any bonds that he may now be required by law to give, and before receiving his tax duplicate and warrant to collect such school taxes, shall furnish to the school district a proper bond, in an amount to be fixed by the board......with such surety or sureties as it may approve, conditioned upon the faithful performance of his duties as such tax collector." The statute then goes on to provide that if such elected tax collector shall fail to furnish such a bond, the board of school directors shall appoint another suitable person as collector of the school taxes in said district in his place, etc. It seems difficult to read that language in any way that would not support the conclusion that since the Act of 1911, the duly elected tax collector of a municipal district could not demand, as of right, the receipt of the school tax duplicate as an incident or a result of his election, even though he had fully complied with every provision of the Act of 1885. The general bond, which under the provisions of that act he was required to give, was to be filed in the office of the clerk of the court of quarter sessions and the sureties thereupon were to be approved by the said court or a judge thereof. Under the School Code the special bond designed to be a separate and special security for the collection of the school taxes was to be in an amount fixed by the school board and the surety or sureties thereon were to be approved by the same body.

It ought to be clear then that the tax collector had no right to expect to be called upon to collect the school taxes unless he complied with the provisions of section 550 of the School Code. It should be equally plain that the sureties who signed his general bond had every right to assume they would not be called upon to answer for any default in the collection of school taxes unless their principal qualified himself to receive the school duplicate by the giving of the special or additional bond required by the School Code. We are not to be understood, even by inference, as asserting that, if the tax collector had qualified as the collector of school taxes and had given the bond required by the School Code, the sureties on his general bond would be discharged from any obligation in case of a default by him in the collection of the school taxes. No such question arises upon this record.

Now the fact is that notwithstanding the provisions of the Act of 1911 and the considerations just referred to, the school directors of the district now in question did deliver to the general tax collector their duplicate and warrant without demanding or requiring from him any bond in addition to the general bond provided for by the Act of 1885. As already stated, the counsel for the school district filed a copy of the bond in the office of the prothonotary of the court of common pleas of the same county and had him execute the warrant of attorney accompanying said bond by entering a judgment for the amount of the default against the appellant sureties. The learned court below refused to strike off the judgment because of the irregularity already referred to, and discharged a rule to open the judgment upon the ground we have just been considering.

In Com. v. Perrego, 40 Pa. Superior Ct. 320, we had before us practically the same proposition here and now in question. In that case Perrego, the appellant, was the duly elected tax collector of Lake Township in Luzerne County. He had duly qualified by tak-

ing the oath of office and giving the general bond prescribed by the Act of 1885 as modified by the later Act of 1893. During his term of office a proceeding, which had been begun earlier, culminated in an order or decree by the Court of Quarter Sessions of Luzerne County authorizing and directing the supervisors of Lake Township to levy a special tax for the purpose of discharging some accumulated indebtedness of the township. In making that order the learned court, in the exercise of its rightful authority, decreed, that the treasurer of the township and the collector of the taxes should each execute and file a bond in double the amount of the special tax, with sureties to be approved by the court, conditioned for the faithful collection and payment of such taxes. We endeavored to make it reasonably clear that, from the nature of the order and the authority conferred upon the courts by the Act of 1878, no right to collect that special tax devolved upon the general tax collector "solely by reason of the fact that he had been elected the general tax collector of Lake Township and had given the bond required by the statute to qualify him to assume the duties of that office." It was conceded in the opinion of this court that the general tax collector had the first right to qualify himself to collect that special tax, but it was declared that if he failed to exercise that right by qualifying himself under the terms of the statute, the right "would be lost or transferred to the special appointee of the court. The collector could not be compelled to exercise it." We further declared "In construing the obligations of sureties upon such official bonds, our courts have been careful to confine them to those which are clearly covered by the condition of the bond, and hence could be fairly said to have been contemplated by the surety when the bond was executed." We can see no reason for modifying the basic proposition from which we must start in the present case. The appellants are sureties and their obligation must be found within the fair intendment of the instrument they exe-

cuted. We have already briefly indicated the reasons why the collection of the school taxes in the present case did not and could not lawfully be considered as a right or perquisite, vested in the general tax collector merely by virtue of his office and his qualification to perform the duties of that office required by the provisions of the Act of 1885. We think, under the authorities referred to and analyzed in Com. v. Perrego, supra, the mere fact that the collector in the present case had the first right to qualify as a collector of the school taxes, does not in any way affect the soundness of the conclusion that, quo ad the general bond signed by these sureties, the school taxes were a special tax not covered by the general bond, unless at least the collector had exercised his right and qualified himself to collect those taxes. The early case of Com. v. Toms et al., 45 Pa. 408, is also an authority most difficult to distinguish in principle from the case at bar. A brief quotation from the opinion of Chief Justice LOWRIE will demonstrate its weight in the determination of the question before us: "Under the general law of his office the register of wills gives a bond with sureties, for the faithful execution of his duties, and for the payment of all moneys received by him for the use of the Commonwealth; and this would seem at first glance, to include his duties and receipts under the Collateral Inheritance Tax Laws passed since the bond was provided for, especially when, as here, the bond was given since those tax laws were passed.

"But when we turn to the Act of March 22, 1841, P. L. 99, imposing the collection of the collateral inheritance taxes on the register, we find that the legislature did not rely on the general official bond of the register as a security for the performance of this new duty, but required a special bond for this purpose, and provided a mode to enforce the giving of it. It seems to us very plain, therefore, that the general bond is not intended to secure either payment of these collections or the giving of the special bond to secure them." Now observe it was

part of the condition of the general official bond in that case that the register should account for and pay "all moneys received by him for the use of the Commonwealth." Before the bond in that case was given, a statute had provided that the register of wills should be authorized and empowered to collect the collateral inheritance taxes if and when he gave the special bond required by the Act of 1841. That would seem to have made out a stronger case against the sureties on his general bond than is exhibited by the facts and the record in the case before us. Nevertheless, it was held the sureties on the general bond were not liable for the default of their principal in the collection of the collateral inheritance tax. Now it is true that in this view of the case we are unavoidably led to some speculation as to interesting and more or less difficult questions that might arise, but in so far as this record is concerned they are only speculative and nothing we could here and now say on such subjects would be anything more than obiter dicta.

The learned court below appears to have been of the opinion that the question was controlled by Black v. Duquesne Borough, 239 Pa. 96. The pith and marrow of the decision in that case we believe to be fairly exhibited in the following excerpt from the opinion of Mr. Justice ELKIN: "If a tax collector has not been elected, or if when elected he refuses to qualify, or to furnish a bond, or if for any proper reason there is a vacancy, then and in those events the board is given the power of appointment. Nothing of this kind appears in the present case. A tax collector was elected, qualified and offered to furnish a proper bond. He was not only willing to serve but refused to be ousted. There was no vacancy to be filled by appointment." It appears to us to be reasonably plain that the case just cited cannot fairly be said to be controlling of the question before us. The same is true of the case of Copelin v. Harrisburg School District, 242 Pa. 221. The proceeding was for a writ of mandamus to compel the school directors to deliver their

duplicate and warrant to the city treasurer of Harrisburg. It was there held, "It therefore follows that taxes levied by a school board organized under the Act of 1911 are to be collected as provided by the Act of 1901 in districts comprising cities of the third class. The School Code did not provide for the election of collectors of school taxes, and we have recently decided, it was the plain intention of the legislature to leave undisturbed former acts which provided for the election of tax collectors by the people. As to townships and boroughs this was decided in Black v. Duquesne Borough School District, 239 Pa. 96; as to a city treasurer elected prior to the adoption of the School Code by Com. v. Tobin, 239 Pa. 105; and as to a city treasurer elected after the adoption of the School Code by Com. v. Dusman, 240 Pa. 464." We find the same line of reasoning in McGarrity v. McQuail, 240 Pa. 232.

We are of opinion, therefore, that the learned court below, relying chiefly on the two cases just above considered, fell into error in making them the basis of his refusal to open the judgment and permit the defendants to make their defense. The order discharging the rule to that effect must therefore be reversed and set aside and the record remitted to the court below with direction to make such rule absolute and proceed to the trial of the issues raised in the manner prescribed by the law. It is so ordered.